May it please the Court, Patrick Yingling for the appellant Philip Camillo-Amisano. With me at council table is Elizabeth Bowman. I'd like to present initially for 11 minutes and reserve 4 minutes for rebuttal. This is a Bivens case, and I'll get right to the point. After briefing in this appeal, the Supreme Court decided Egbert v. Boulay. Egbert impacts this case, but it does not foreclose it. To be sure, Egbert derails two of the four claims advanced on appeal, the First Amendment retaliation claim and the Eighth Amendment deliberate indifference claim. But Egbert does not foreclose the other two claims, specifically the First Amendment access to courts claim and the Sixth Amendment right to counsel claim, and here's why. In Egbert, the Supreme Court clarified that the single question under Bivens pertains to who is better equipped to create and define the Bivens damages remedy, Congress or the courts. And when it comes to the access to courts claim and the right to counsel claim, it is the courts who are better equipped. And when it, and that's because unlike any of the Bivens claims that the Supreme Court has rejected, these claims involve the court adjudication process. Mr. Camillo-Amasano alleges that prison personnel interfered with his filings to the courts, which caused, among other things, the government's motion to dismiss his appeal going unchallenged. So let me, so why isn't, why doesn't the prison internal administrative system allow for correction for future harm that might, similar harm that might occur by prison guards in interfering with prison mail? I think there's a few different reasons. I think the first one is that anything involving future harm, an injunction in that regard, would not, and I can get to this, would not be an adequate remedy. Now, I realize that the Supreme Court talked about the remedial systems not needing to be adequate, but I want to touch on something that the Supreme Court emphasized in its opinion. It talked about existing remedies, and the Supreme Court in Egbert clarified that, quote, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy. So that takes us back to the original point. When we're talking about alternative remedies, we're still asking that single dispositive question that Justice Thomas articulated, and that is, who is better equipped to create and define the damages remedy? And when we're involved with the court adjudication process, I cannot imagine any other better suited category of claims in which the courts are better equipped. But you're dealing with the penal system to start with, correct? We are dealing with the penal system, that's right, Your Honor. With the correctional, with the Bureau of Prisons, and the administrative system? That's right, so that system exists. And what you're saying is that we, we're better equipped at allowing a prisoner to maintain a damages action, a violation of a prisoner's right to free access to the courts by interfering with his prison mail. Right, there is. Why? Yeah, there is no body, no entity better suited than the court to weigh the costs and benefits of that, and I'm not making that up. Wait a minute, it's not just the costs and benefits. Judge Peistok talked about an alternative administrative remedy, I'm just going to use that loosely, right, to correct going forward how mail does or does not get forwarded. But I think you're, you have a heavier lift, right, which is the obligation to try to convince us that we're better equipped to decide whether a prisoner should be able to get money damages for that breach. Right. I'm going to call it a breach, right, for that failure. So that's different. Right, I think that is a little different, and I think the court is better suited, and my touch point for that is this court's precedential decision in Lanusa v. Love from 2017, which involved an instance in which this court recognized a Bivens damages remedy in a case where there were allegations of government misconduct in the adjudication process, and the court stated, judges are particularly well equipped to weigh the costs of constitutional violations that threaten the credibility of our judicial system. Indeed, there are few persons better equipped to weigh the cost of compromise adjudicative proceedings than those who are entrusted with protecting their integrity. But we're talking here about it, excuse me, Judge Miller, we're talking here about another layer of complication, which is we're talking about inside a prison. Right. Which is not true of the case that you're referring to, right? Right, so we are dealing with a prison situation, and I think that brings me to another nuance here that is relevant for the court. In this recognizing a Bivens remedy, because Mr. Camillo Amasano specifically alleges that he filed official grievances, and the relevant parties did nothing about it. The grievance process isn't working. It's not available to him. That's part of his claim as a part of it. And if that doesn't exist, then the government can't point to the grievance procedure and say that's a viable remedy when it didn't work in the first place, at least to a dead end. Can I ask you, are you familiar with our decision in Pettibone against Russell from last month? I'm not, Your Honor. Okay, well, so I mean, it's recent, but I mean, so I mean, I think Egbert and, you know, the line of cases of which it is a part make pretty clear that what matters is that there be some alternative remedial scheme that exists in the world. And like, whether you, the plaintiff, would actually be able to use it, whether you would get money from it, whether it would help you in any way is not really relevant. So why, I mean, it may be that he wasn't able to invoke the process, but under Egbert, why is that a basis for us to create a cause of action? Now that you say it, Your Honor, I'm sure that I did read that case. And I think there are two reasons why this case is different than those line of cases after Egbert in this Court. And one has to do with the types of events here, the court adjudication process. And the reason why I say that is because even though the Supreme Court in Egbert talked about just as long as there's some alternative remedial scheme in place, that's good enough. But it's set it in the context of that single dispositive question, which is whether the courts or Congress are better equipped. And there is no other area where the courts are better equipped than Congress, than the area that involves the court adjudication process. And I think the addition of the fact that Mr. Camillo-Amasano was not able to use the administrative process takes this case outside of those normal cases. There is no accountability in this situation if this Court does not allow a Bivens remedy to go forward here. I would also add here that in the Bivens cases, there is no accountability against recognizing a Bivens remedy. And none of them are present here. Mr. Camillo-Amasano is not challenging any policy. He is not suing any high-level officials. He is not asking this Court to interfere with any sensitive government functions. He is not asking this Court to reassess the government's response to any national security emergency. And as mentioned, if this Court does not recognize the Bivens remedy, then we do not have any accountability for situations like this, in which a prison staff interfere with someone's ability to utilize the court process, and then also do not allow him to go forward with the administrative procedure. So could I just, if I were opposing counsel, and maybe she'll do this, but if I were opposing counsel, I'd say, well, wait a minute, the PLRA specifically recognizes that if there's a prisoner who's being, a guard who's being abusive, that a prisoner can file a grievance, as you know, to leapfrog, right, and get around that problem. So what about that? I think with respect to the PLRA, is your question then that if somebody is, if the prison is not allowing him to go forward, that he has other means that are available to him? I'm trying to answer, just hypothetically, your rhetorical question, which is, you're arguing strenuously that there would be no accountability if a guard were actively interfering with the prisoner's ability to use the grievance process, and so what I'm responding with is, the PLRA allows the prisoner to file a grievance that, you know, doesn't involve that individual and to leapfrog over to his or her, you know, superior. So what about that? My response is that the record here is that Mr. Camillo-Amasano took every possible measure, whether it was with the regional director, the warden, the normal grievance process, or the state attorney general's office. Everyone came back at them, go back to, they all said, go back to the Bureau of Prisons, but whenever he did that, they had no investigation. This is what he alleges. With respect to his access to courts claim, he alleged that he filed a formal grievance and, quote, no action was taken, no investigation. With respect to his right to counsel claim, he alleged that, quote, formal grievances were filed with Mr. Garcia and the Bureau of Prisons. With no results, the warden would not look into the situation. I don't know how we can expect a prisoner in this situation to do anything else, and if we don't provide them with that Bivens-Damages remedy, then we're going to have a situation in which prison administrators can let the guards take this action in the open, this alternative, this avenue for Bivens to continue to exist. Why couldn't they suspend the guard that interfered with the prisoner's mail? Yeah, they certainly could, but from the record... Why are damages the only acceptable remedy? So they certainly could take that action, but from the record here, we have it that they never even started the investigation, Your Honor, and I think that the damages remedy is appropriate because this is a backward-looking situation. His appeal has already been dismissed. His habeas action was already dismissed because... Couldn't he take... Forgive me for interrupting, but if he filed... If his story... This is a hypothetical prisoner. It's a hypothetical prisoner. If he filed a grievance and there's an evil guard that's intercepting and not allowing that to go forward, so he doesn't get any action, why couldn't he file in court and claim, right? He's exhausted of his administrative remedies and seek relief, not for money damages, but to have the administrative disciplinary process continue? I think, Your Honor, and this gets to the point of whether this court is better positioned, I think a damages remedy is the one that prevents this deterrent, that actually gives the deterrent here for the guard not to do that in the future, and that's why I think this court is better positioned to assess that, and I would respectfully request that... I think that's a good... Don't worry. I'm going to give you a little more time because I know we're taking your time. I think your point is well taken, and I appreciate your efforts here, but could you answer my question? Sure. Because it really was a sincere question. Sure. Couldn't a prisoner do that and seek to discipline that guard, that specific guard, by trying to exhaust the administrative remedy, coming to court, assuming that I've got this evil hypothetical guard that's truly intercepting his mail and not allowing the grievance process to go forward? He wouldn't get money damages. He would have a response, in response to Judge Pius's point about trying to correct the system going forward. Right. And I appreciate you think that's an inadequate remedy, but it does functionally exist, doesn't it? I'm not specifically aware of how he would go about doing that. He would, in my hypothetical. Right. He'd initiate an administrative grievance process. He would deem it exhausted, right, and unsatisfied, since there hadn't been, and there's a provision for that, and you wait, I think it's six months or some period of time, and then he would come to court. I guess my response to that, Your Honor, is that that would necessarily only be forward looking, and it would still not prevent any kind of deterrence or make this individual whole in a way that he needs to in this situation. Fair enough. We'll put two more minutes on the clock. Let me just make sure. Do you have  Thank you, Your Honor. And thank you for your patience. We'll hear from opposing counsel, please. Good morning, Your Honors, and may it please the Court. Assistant United States Attorney Jessica Che, on behalf of the United States, is amicus and in support of Defendants' Appellees. A very straightforward application of the Supreme Court's instructions in Abbasi and Egbert compels the affirmance of the District Court's dismissal of Mr. Kamil Amisano's sixth amended complaint. Following the Supreme Court's decision in Egbert, Mr. Kamil Amisano, as he does today, appropriately acknowledged that a number of his claims are foreclosed. And he has always conceded that each of his remaining claims present novel context. So the primary question for this Court today is simply whether any special factor counsels against extending the Bivens remedy to any of his remaining claims. And the answer to that question is yes. There are multiple special factors, as illustrated in our brief, that should give this Court pause before extending the Bivens remedy to the novel claims presented here. But as Egbert instructs, even one cause to believe that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed must foreclose an extension. The Bivens inquiry notably does not invite courts to actually undertake the task of weighing the costs and benefits of implying a cause of action, but instead requires the Court to ask if there is any rational reason, even one, to think that Congress might be better suited to do so. And importantly, even if there's the potential that judicial intrusion into a particular field might be deemed harmful or inappropriate, the Court must not imply a Bivens remedy. Our brief discussed several special factors, but there's one in particular I'd like to highlight for the Court today, and that's the availability of alternative remedies and processes, which seem to be of interest to the Court in my colleague's presentation. In Hoffman v. Preston, this Court considered but ultimately rejected a federal inmate's argument that the administrative remedy process was inadequate to redress the issue. In Hoffman v. Egbert, this Court withdrew its published opinion extending Bivens to the failure-to-protect claimant issue in that case, and replaced it with an albeit unpublished memorandum affirming the dismissal. In Egbert, importantly, the Supreme Court specifically cited the BOP's administrative remedy program as an alternative remedy that was analogous to the Bivens remedy. Could I just ask a few questions about that program? Yes. When I was preparing for this case and looking at the regulations that pertain to the administrative remedy program within the BOP, I gather that program is only specifically designed to deal with the prisoner's complaint. That is, so you said you gave the example of the case that involved excessive use of excessive force or a beating situation. The Hoffman case was a failure-to-protect case. Right. Okay, so the prisoner complains. It goes through this administrative process. Let's say, it's kind of serious, but maybe they don't make any real findings one way or another. Better yet, for the prisoner, they find that the guard used unnecessary force. Does the hearing officer have any authority over the guard? I mean, can the hearing officer say this guard ought to be reprimanded or ought to be disciplined, or does that invoke a whole new process? I mean, how does a system that relates to disciplining prison guards relate to the administrative remedies program? I think my answer to your question implicates the Pettibone case, the opinion of which I issued last month and authored by you, Judge Miller, that even separate and apart from the administrative remedy process, the Department of Justice regulations require department employees to report instances of serious administrative or criminal misconduct by department staff to the Office of Inspector General or to a supervisor or that component's Office of Internal Affairs, which in turn would determine whether alleged misconduct rises to the level of criminal conduct that would necessitate investigation by the Office of Inspector General. So there is that avenue as well. So how does that relate to the administrative remedies program? I believe that complaints of staff misconduct through the administrative remedy program, similarly, the department staff have an obligation to report that to their Office of Internal Affairs and or the department's Office of Inspector General. And to answer Judge Christen's question, Your Honor is correct that in the event that, if I'm understanding the hypothetical correctly, that in the event that an inmate files an there are escalation procedures worked into the regulatory scheme that allow for the inmate to proceed to the next level appeal and ultimately to the district court and deem the claim resolved. I appreciate that. And I think that's, we've had these cases, and so I think that is the way it works. So if we're talking about a really egregious abuse or, this is the hypothetical, but he does allege in this case, we'll take what he alleges on his Eighth Amendment claim that he was in a prison cell and he was, raw sewage was being injected into the cell and he alleges a scenario that is strikingly similar to one where the United States Supreme Court recently held that non-federal defendants were not entitled to qualified immunity because anyone would know that that violates the Eighth Amendment. So we take these allegations, of course, very seriously. And is it correct that a prisoner, now I'm talking about a hypothetical prisoner, in that circumstance would, the government's position is not entitled to bring a Bivens action, but administratively would have to take this other road, right, and it would take months to alleviate this, or could take months to alleviate the circumstance. That's right, isn't it? Well, to the extent that the inmate is complaining of ongoing conduct, we would submit that Bivens relief is not available because of the administrative remedy process in addition to the availability of don't bring that road. So I'm asking about a condition of confinement that's hideous, and is, am I right that, and this isn't, I'm not trying to give you a hard time, but I'm trying to make sure I'm not overlooking something. He or she, that prisoner, would be left with a process that could take months. I don't know that I can say that it would necessarily take months. If there are exigent circumstances, the, I believe the department, the Bureau of Prisons would have to respond immediately. Here, the allegation was that he was kept in a cell with a non-functioning toilet for about 37 hours. There's more to it, as you know. Yes, yes, of course. And so, and so what I would also say to that is that this court considered allegations very similar to that in another unpublished case, Schwartz v. Meinberg, where there were similar allegations of being confined, I believe for a longer period of time, in a cell with a non-functioning toilet under inhumane circumstances. And this court concluded that the availability of the administrative grievance process, the FTCA and injunctive relief foreclosed the Bivens claims, and that was pre-Egbert. I appreciate that. I'm just trying to get your best response to opposing counsel's, I think, very fair question about would there be any accountability? What would the accountability be if a prison guard were interfering with, you know, a prisoner's efforts to seek some kind of injunctive, prospective-looking correction? And I think you've answered. I think that's it, right? Well, I would submit to you that I believe that the process by which, that obligates department employees to report incidents of serious administrative or criminal misconduct to the Office of Inspector General carries with it, at minimum, professional disciplinary consequences and up to and including criminal prosecution. So I think that that provides the deterrent that, you know, the executive has determined is adequate to address the constitutional interest at issue. I think Mr. Kamil Amisano's primary concern is that he is not being afforded a means to be instructed that an alternative process's failure to afford complete relief does not alone justify the implication of a damages remedy. The obligation to investigate allegations of serious wrongdoing by prison guards, is that in the CFR? Are those regulations in the CFR? Yes. Or are they internal operating kind of manuals and procedures that govern, you know, the overall operation of the prison system? It's the regulations applicable to the Department of Justice. I believe the citation is 28 CFR 45.11, subsection B, and that integrates with the Bureau of Prisons policy in their program statement that requires BOP staff members specifically to report incidents of staff misconduct to their Office of Internal Affairs. Let me just see if we have any more questions. Oh, I don't think we do. Thank you very much, Your Honor. Thank you for your argument, counsel. We'll hear from opposing counsel. Oops. I didn't mean to be musical. Could you put two minutes on the clock, please, Madam Clerk? Go right ahead. Thank you, Your Honor. I'm happy to take the Court's questions. I want to address one point that I think opposing counsel did not address, and that is the fact that these claims involve the court adjudication process. And I want to emphasize that the Supreme Court in Egbert did not do away with Bivens. And it also did not limit Bivens to the three instances that have existed before where the Supreme Court has recognized a Bivens claim. What it did say is that there's a single dispositive question, and the courts need to ask, who is better equipped, whether it's Congress or the courts? And if we have claims involving the court adjudication process, and this Court concludes that it is not better equipped than Congress to address those types of claims, then Bivens truly is dead. There is nothing left, and it is limited even more than what the Supreme Court addressed previously. I think that issue is before you. I think it's an important one, and I would ask this Court to reverse and remand on that basis. Thank you very much for your argument. We've had the benefit of pro bono counsel's assistance in this case, and I want to thank you on behalf of the Court. It's a tremendous benefit to us, and we appreciate your efforts very, very much indeed. And thank you for your careful arguments as well. All right, we will take that case under advisement.
judges: PAEZ, CHRISTEN, MILLER